UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| SUSAN C. and GEORGE C. for themselves and a/n/f M. C., a minor | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMAND |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| MANCHESTER SCHOOL DISTRICT, SAU 37, | ) | |
| BOLGEN VARGAS, SUPERINTENDENT, | ) | |
| Manchester School District, SAU 37, sued in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**COMPLAINT**

**INTRODUCTION**

1.      Defendant's high level administrators took action that prevented M.C., a then 8 year-old boy who had recently moved to Manchester, NH, from attending school for seven weeks in 2017, because of his disabilities.  Plaintiffs bring this action for declaratory relief, compensatory damages and attorney's fees under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation at 35 C.F.R. § 104.33(d), Section 505(b) of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2)(B), The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and its implementing regulations, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.  On or about January 10, 2017, Susan C. ("Mrs. C.") and M. C. went to the Beech Street School, 333 Beech Street, Manchester, NH 03103, M.C.'s local public elementary school, to

enroll M.C. in school.  However, Defendant refused to provide any education at all to M. C. until March 8, 2018.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Plaintiffs' federal law claims under 28 U.S.C. §§ 1331 and 1343.

3.      The Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b).  Defendant resides in the District of New Hampshire, and all of the events giving rise to this action occurred in the District of New Hampshire.

## PARTIES

5.      Plaintiff M. C. is a ten year old boy.  At all times relevant to the events giving rise to this action, he resided in Manchester, NH.  He currently resides with his family in Antrim, NH.  M.C. has autism and functions significantly below age expectations in all academic and functional areas.  He is largely nonverbal, and his expressive and receptive language communication is at about a 2 year old level.

6.      Plaintiff Susan C. is M. C.'s mother.  At all times relevant to the events giving rise to this action, she resided with her family in Manchester, NH. She currently resides with her family in Antrim, NH.

7.      Plaintiff George C. is M. C.'s father.  At all times relevant to the events giving rise to this action, she resided with his family in Manchester, NH. He currently resides with his family in Antrim, NH.

8.      Defendant SAU 37, MANCHESTER SCHOOL DISTRICT has a principal place of business at 195 MacGregor Street, Suite 201, Manchester, NH  03102.   School Administrative Unit (SAU) 37 is organized pursuant to NH RSA 194-C:1 and 194-C:1, II as a corporation with the power to sue and be sued, and, pursuant to NH RSA 194-C:3 is a single district school administrative unit, comprising the Manchester School District. The District is governed by a fifteen member committee that is elected every two years. The Mayor serves as chairperson of the Board.

9.      Defendant Dr. Bolgen Vargas is the Superintendent, SAU 37 Manchester School District, and has a place of business at 195 MacGregor Street, Suite 201, Manchester, NH  03102. Pursuant to NH RSA 194-C:4,II, he oversees "governance, organizational structure, and implementation of administrative services" including, development, review, and evaluation of curriculum, coordination of the implementation of various curricula, provisions of staff training and professional development, and development and recommendation of policies and practices necessary for compliance relating to curriculum and instruction"  NH RSA 194-C:4,II(c)  and "Compliance with laws, regulations, and rules" including  the Americans with Disabilities Act. NH RSA 194-C:4,II(d).  He is sued in his official capacity.

FACTS

10.     M. C. and his family moved to Manchester, NH from Louisiana, on January 9, 2017.

11.     Defendant SAU 37 Manchester School District maintains a website that lists the documents required when a new student registers for school, such as the child's birth certificate, proof of residence, and immunization records.  Defendant's registration policy states that parents register children at the local public school.

12.     On or about January 10, Mrs. C. and M. C. arrived at the front office of Beech Street

School, M.'s local public school to register him for classes.  Per Defendant's website, Mrs. C.

brought M.C.'s birth certificate, immunization record and evidence of residence to the reception

staff.  Defendant accepted these documents, and at no time told Mrs. C. that there was any

problem with any of these documents. She also completed registration forms in the Beech Street

School office.

13.     M.C. is a student with disabilities who receives special education and related services

pursuant to the Individuals with Disabilities Education Act 20 U.S.C. § 1400 et seq., M.C. had a

current Individual Education Program (IEP) for the 2016-2017 school year signed by his parents

and his former school district, which Mrs. C. provided to Defendant when she registered M.C.

14.     After Mrs. C. gave the receptionist the registration forms and M.C.'s IEP, Defendant's

employee, Charlene Gleason, introduced herself as a learning disabilities specialist.  She told

Mrs. C. that M. C. could not start school until the school district evaluated him.

15.     Defendant does not impose an evaluation requirement on nondisabled children before

Defendant begin to educate them.  Indeed, Defendant allows nondisabled children who do not

present evidence of residence to attend school for a ten day "grace period" to allow them to

obtain proof of residence. Defendant also does not impose these requirements on adults who

wish to enroll in Defendant's Adult and Community Education courses.

16.     Mrs. C. and M. C. then left the school.

17.     This requirement was only the first of many obstacles that Defendant placed in the way

of M.C.'s attending school, none of which are required of nondisabled children prior to attending

school, or adults prior to attending Defendant's Adult and Community Education Classes.

18.     On or before January 11, 2017, Jennifer Freitas, Defendant's Special Education Coordinator, had been advised that M.C. had moved into the school district and was a special education student.  On January 11, she emailed Karen Davis, an educational consultant employed by SAU 37 and Jennifer Dolloff, Ph.D., Defendant's Director of the Office of Student Services, and Defendant's Section 504 coordinator, about M.C.  However, M.C. was not placed in any educational setting.

19.     As the Director of the Office of Student Services, Dr. Dolloff was the head of an administrative department within the Superintendent's Office that provides services to  SAU 37 Manchester School District related to enrollment, transportation, safety, and students with special needs.  Defendant also designated Dr. Dolloff as its Section 504 Coordinator.  A school district subject to Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, et.seq., is required by federal regulation to designate an individual to be responsible for coordinating efforts to ensure Defendant's compliance with Section 504, and its implementing regulations prohibiting discrimination on the basis of disability. 34 CF.R.§ 104.7(b). Regulations implementing Title II of the Americans with Disabilities Act impose the same requirement on public entities. 28 CF.R.§ 35.105.7(a).

20.     On January 19, 2017, Defendant convened a meeting that was attended by Mrs. C., Charlene Gleason, Mark Ersick, who is an associate school psychologist from Defendant's administrative offices, a speech language pathologist and an occupational therapist, all of whom were Defendant's employees.  The action Defendant recommended at that meeting was to conduct an evaluation.  Defendant did not consider any other options, including to begin to educate M.C.

28.     Defendant does not require medical records, other than immunization records, before it educates nondisabled children.

29.     The following school day, Monday, January 30, Mrs. C. emailed Mark Ersick.  She noted that he had told her that she could send along anything regarding M.C.'s diagnosis, and that Gleason had rejected the diagnosis because it was too old.  She wrote, "I am dismayed at the thought that this is what delays his entry to school all these weeks.…"  She wrote .  I do not recall anyone asking me for this, or explaining it as a requirement.  If this is what is needed for him to begin school, please let me know, along with the requirements of the letter and the necessary credentials of the letter author.  Also, please let me know anything else I need to provide.  "This prolonged absence from school is detrimental to his progress, and I will do whatever is necessary posthaste to get in the education he so desperately needs."

30.     Mr. Ersick wrote back that "I believe what happened is that what information we received from [M.C]'s previous schools have reflected that a re-evaluation was needed as the previous testing with more than three years old{sic}.  When that happens, then new/current evaluations are needed such as the adaptive behavior scale which I completed with you.  Academic, speech/language, and so on are also needed.  As part of this process a current (within the past year) medical update is needed from a physician concerning any medical diagnosis.…..I look forward to our next meeting to share what the current testing reflects."  He did not write that M.C. should be in school.

31.     In response to Defendant's requirement, with M.C. still not being allowed to attend school, Mrs. C. was able to obtain the earliest available appointment , on February 3, with M.C.'s new pediatrician.  Immediately after the appointment, Mrs. C delivered the letter to the Beech Street School.  She confirmed this in an e-mail to Gleason on the morning of February 3.  She

wrote "The physician suggested that I formally state that I am open to [M.C.] being placed out of district that is in his best interest.  As always, I am committed to doing the best for [M.C.], and him and will accommodate any placement that I feel benefits him."

32.     Defendant still did not enroll M.C.. Instead, Gleason emailed Mrs. C.  at the end of the day, with copy to Mr. Ersick  that she was "trying to get the team together to meet on Thursday, February 9."

33.     Defendant does not require a meeting with parents prior to educating children without disabilities.

34.     On February 5, Mrs. C. e-mailed Gleason, stating that she would attend the meeting on February 9.  She wrote "[M.C.] sorely misses being in school, and it is my top priority to do what I can to facilitate his reentry."

35.     On February 6, Gleason e-mailed Mrs. C. thanking her for her "patience."  Defendant did not offer to admit M.C. into school, however.

36.     Defendant rescheduled the February 9 meeting to February 14. Attending the meeting in addition to Ms. C., were the same four individuals who had attended the January 19 meeting and Karen Davis, the educational consultant who had been emailed regarding M.C. over a month before.  Ms. Davis identified herself as the "LEA rep."  The "LEA rep." is required by federal regulation implementing the Individuals with Disabilities Education Act to be knowledgeable about the educational programs and resources of a school district, and to be able to commit district resources to educate a student with disabilities. 34 C.F.R. § 300.321(a)(4). Defendant proposed to identify M.C. as a special education student, and to try to schedule a tour of the autism program at the Smyth Road school "as soon as possible."  No other options, including

immediately educating for M.C., who, by that time, had been bereft of a public education for five weeks, were considered.

37.     Defendant does not require additional meetings or tours of classrooms as a prerequisite to educating students without disabilities.

38.     On February 14, Gleason e-mailed Karen Davis asking "Can we set up a tour of the program at Smyth Road?  She noted that Mrs. C."is eager to get [M.C.] in school."

39.     Karen Davis responded, "Ae you in touch with Jen D. and Jen F. about sending him to Smyth?  What grade?  I want to get approval to offer that as the placement…."  On information and belief, Jen D. is Dr. Dolloff and Jen F. is Jennifer Freitas, and Defendant required that either or both of them approve M.C.'s attendance in the autism program. Neither Dr. Dolloff and Ms. Freitas had done so.  Therefore, Defendant cancelled the "tour."

40.     Karen Davis copied Mrs. C. on the email.  That night, Mrs. C. wrote Gleason "Ms. Davis' last e-mail concerns me.  It seems that [M.C.]'s placement isn't the fait accompli that we thought it was.  Thank you for keeping me updated.  I shall be on pins and needles, praying that there aren't any more delays."

41.     On February 16, Mrs. C e-mailed Gleason, "As each week goes by without M.C. placed, the situation becomes more concerning. . . . We need this resolved" 40     Gleason responded "We are trying to work with the special education coordinator for the elementary schools. [Jennifer Freitas]."

42.     Mrs. C responded, "Please forgive my frustration.  I know there are many people involved in this.  I also know that if I were the one keeping [M.C.] out of school for over a month, I would be investigated, and rightly so.  Please ask the person whose court this ball is currently in to prioritize this. [M.C.] deserves an education."

43.     Also on February 16, Mrs. C. emailed Santina Thibedeau, the state director of special education at the state Department of Education, describing what had transpired and asking for help in getting Defendant to educate M.C.  She concluded, "My son deserves to be in school, and I am starting to think I may need to retain a third party in order for this to happen."

44.     Gleason did not respond for five days.  On February 21, she emailed Mrs. C that "We are still trying to get some answers *from the district office*."   She wrote: "The Autism program is full, but *we are trying to advocate for [M.C.]."* (Emphasis added.)  She added: "Thank you so much for your continued patience!"

45.     Defendant does not refuse to educate a child who does not have disabilities because a classroom is "full."

46.     On February 21, Ms. Mrs. C responded "If the program that would best fit Matthew is full in Manchester, as you mentioned in your earlier e-mail, might I be so forward as to suggest that he be placed out of district?  It seems that placing him in a specialized autism program in another district is preferable to wedging him into a Manchester classroom that does not fit him as well, or worse, leaving him sitting at home until an autistic child moves or ages out of the program.  I know there are many districts in the area acclaimed for their Autism programs, and if Manchester truly cannot give him the services that he needs at this time, sending him somewhere that can give him what he needs should be the only answer."

47.     The following day, February 22, Gleason e-mailed Mrs. C. to tell her that the Beech Street School assistant principal, Kelly Espinola, and she had talked to Freitas, and Freitas had asked for additional paperwork before offering a classroom placement.

48.    On February 24, Christine Martin, Ed.D., the assistant superintendent for elementary education, e-mailed Mrs. C. to tell her that she is " looking forward  resolving M.C.'s situation. However, Dr. Martin did not offer to resolve M.'s "situation" by educating him immediately.

49.    On February 24, Dr.  Dolloff told Mrs. C. she would get in touch "early next week." However, she did not begin M.C.'s education.  On or about that date, Dr. Dolloff confirmed that she had to confirm tours of classrooms proposed for [M.C.].

50.    On March 1, 2017, with M.C. still not in school, Mrs. C. filed a formal complaint with the State Department of Education pursuant to 34 CFR §§ 300.151-153 and New Hampshire Department of Education regulations Ed. 1121.  Pursuant to Ed 1121.01(a) "Individuals or organizations may report alleged violations of a public agency which are contrary to the provisions of state and federal requirements regarding the education of children with disabilities by filing a complaint" according to the provisions of 34 CFR  § 300.153.  Ed. 1121.01(b).

51.    She e-mailed and sent hard copies of the complaint to Dr. Martin.  In an e-mail to Dr Martin, Mrs. C wrote "This situation is so egregious that I feel a formal investigation into this matter, along with a review of the action of the parties involved, is warranted, regardless of the outcome of my son's future placement.  What happened to my son should not happen to any child, much less a child with his severity."

52.    On or about March 3, Dr. Martin acknowledged Mrs. C's complaint to the Department of Education.

53.    On March 5, Karen Davis, who had served as the "LEA rep" emailed Dr. Martin regarding Mrs. C's decision to file a complaint.  Her email stated in its entirety: "It's her job to advocate for her son as loudly as she sees necessary and I admire her mama-warrior spirit!  As

much as I wish she did not feel it necessary to file a formal complaint, I sincerely believe we will find resolution."

54. On March 8, 2017, Defendant enrolled M.C. at the Jewett Street School.

55. Mr. and Mrs. C. suffered financial loss and emotional distress as a result of Defendant's failure to educate M.C. when she registered him for school on January 10, 2017.

56. On March 28, Defendant determined that "reliable and comprehensive information about M.C." shows that he will "suffer harm or regression serious enough to negate the benefits of his school year's special education program" if he is out of school for the two summer months.

57. In addition to the loss of educational benefit, it was emotionally distressing for M.C. not to be in school, and for Mr. and Mrs. C. to face one roadblock after another, notwithstanding that they fully cooperated with each obstacle Defendants erected.  Due to Defendant's discrimination against their son, Mr. and Mrs. C. moved out of Manchester School District.

58. On April 19, 2017,  Santina Thibedeau, the state Director of Special Education for the NH Department of Education wrote Dr. Vargas.  Copies were sent to Dr. Dolloff and Dr. Martin. The letter was written due to Defendant's "long-standing noncompliance regarding Compliance and Improvement Monitoring" beginning in 2012, regarding Defendant's provision of education to students eligible for special education, all of whom are students with disabilities.  Ms. Thibedeau wrote: "The Bureau has been working with the District special education administrators for the last several years/months." and "Due to the length and repetitive nature of the noncompliance and in order to assist the district in completing the corrective actions," the state Department of Education was taking enforcement actions against the district.  Among the needs Defendant itself had identified as "District Identified Root Cause" "is a lack of timely and

effective communication and training to staff. . . [that] may result from a lack of understanding at the administrative level."

59.     On May 3, 2017, after full investigation in which Defendant and Mrs. C. participated, Frank Edelblut, the Commissioner of the Department of Education, issued a written decision on Mrs. C.'s complaint.  Based on the investigator's findings of fact, the Department of Education found that Defendant had failed to comply with the Individuals with Disabilities Education Act by failing to provide M.C. with a free appropriate public education, as required by that statute, and, specifically 34 C.F.R. 300.323 §§ (f)(1) and (2), and ordered corrective action, specifically, to "provide the student with compensatory services in accordance with the IEP the parent provided to the district upon registration of the student in the Manchester School District" "equivalent to 7 weeks of compensatory services." and to provide training/notification to all special education staff."

60.     Due to Defendant's discrimination against their son, Mr. and Mrs. C. moved out of Manchester School District.

61.      On June 16, 2018,  Mr. and Mrs. C filed a due process hearing request pursuant to The Individuals with Disabilities Education Act 20 U.S.C. § 1415(b)(6) and (7)  requesting an order that Defendant had violated the Act and its implementing regulations when it failed to provide M.C. with an education from January 10, 2017 until March 8, 2017.  Defendant did not dispute that it had not provided M.C. with a free appropriate public education during this time. On July 30, 2018, Scott Johnson, Esquire, the administrative hearing officer, found that Defendant had not provided M.C. with a free appropriate public education until March 8, 2017.

FIRST CLAIM

Intentional Discrimination by Exclusion from Public Education in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

62      Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 61 inclusive.

63.     In enacting the Americans with Disabilities Act, ("ADA"), the Congress found that the "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion" and "exclusionary qualification standards and criteria" 42 U.S.C. § 12101(a)(5).

64.     Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination based on disability.

42 U.S.C. § 12132; 28 C.F.R. §§ 35.104 & 35.130(a).

65.     Prohibited disability-based discrimination by public entities includes denying a qualified individual with a disability the opportunity to participate in or benefit from aids, benefits, or services 28 C.F.R. § 35.130(b)(1)(i), or to afford an opportunity to participate that is not equal to that afforded nondisabled individuals 28 C.F.R. § 35.130(b)(1)(ii).

66.     A public  entity may not "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving the aid, benefit, or service  28 C.F.R. § 35.130(b)(1) (vii).

67.     M.C. is a "qualified individual with a disability" within the meaning of the ADA, 42 U.S.C. § 12132; 42 U.S.C. § 12131(2).

68.     Defendant SAU 37 Manchester School District is a public entity within the meaning of Title II of the ADA and the regulations promulgated thereunder. 42 U.S.C. § 12131(1)(B).

69.     In violation of the ADA, Defendants intentionally discriminated against Plaintiff M.C. and excluded him from participation in and denied him the benefits of the services, programs or activities of a public education solely on the basis of his disability because it failed to educate him from January 10, 2017 through March 8, 2017.

70.     In contrast to the process nondisabled children encounter when they enroll from another state,  Defendant intentionally refused to provide immediate instruction to M.C., and required (a) an evaluation; (b) a doctor's diagnosis dated within a year; (c) a meeting with the parent; (d) a "tour;" (e) a second meeting, (f) recommended to Mrs. C. that she should move out of the district and (g) refused to provide M.C. with an education because its program was "full."

71.     Defendant's actions were intentional and/or evidenced animus against Plaintiffs and their right to be free from discrimination.

72.     In the alternative, Defendant acted with deliberate indifference to the strong likelihood that pursuit of its policies would likely result in a violation of M. C.'s federally protected rights. Defendant had actual or constructive knowledge that M. C. was not being educated because of his disability, and that M. C. had a federally protected right to be free from discrimination and to be educated, but failed to take action to enroll M. C. in school when his mother registered him on January 10, 2017.

SECOND CLAIM

Intentional discrimination by Utilization of Criteria and Methods of Administration in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.  and its implementing regulations at 28 C.F.R. § 35.130(b)(3)(i) and (ii)

73.     Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 72 inclusive.

74.     A public entity may not "utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3)(i) and (ii).

75.     Defendant required evaluations, medical reports, meetings and tours prior to providing a public education to M. C.   These criteria and methods of administration had the purpose of excluding M. C. from education in violation of 28 C.F.R. § 35.130(b)(3)(i) and (ii).

76.     In the alternative, if these criteria and methods of administering did not have the purpose of excluding M. C from an education, they had the effect of excluding him from an education. 28 C.F.R. § 35.130(b)(3)(i) and (ii).

77.     Defendant's actions were intentional and/or evidenced animus against Plaintiffs and their right to be free from discrimination.

78.     In the alternative, Defendant acted with deliberate indifference to the strong likelihood that pursuit of its policies would likely result in a violation of M. C.'s federally protected rights. Defendant had actual or constructive knowledge that M. C. was not being educated because of his disability, that M. C. had a federally protected right to be free from discrimination and to be educated, but failed to take action to enroll M. C. in school when his mother registered him on January 10, 2017.

### THIRD CLAIM

Intentional Discrimination by Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.  and its implementing regulations at 28 C.F.R. § 35.130(b)(7)

79.     Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 78

inclusive.

80.     28 C.F.R. § 35.130(b)(7) provides:

    A public entity shall make reasonable modifications in policies, practices, or procedures
when the modifications are necessary to avoid discrimination on the basis of disability, unless
the public entity can demonstrate that making the modifications would fundamentally alter the
nature of the service, program, or activity.

81.     Mrs. C. registered M.C. and made multiple verbal and written requests that he be

educated.

82.     Defendant had numerous ways it could have educated M.C., including an "autism class."

83.     It was obvious that Defendant needed to educate M.C., and, if a class placement was not

immediately available, Defendant had to provide reasonable accommodations to educate M.C.,

including requesting a waiver to allow a "full" classroom to accept him, provide tutoring, or

arranging for services at another public or private school.

84.     Defendant failed to engage in an interactive process with Mrs. C. to identify a reasonable

accommodation that would have immediately allowed M.C. to attend school.

85.     Defendant's actions were intentional and/or evidenced animus against Plaintiffs and their

right to be free from discrimination.

86.     In the alternative, Defendant acted with deliberate indifference to the strong likelihood

that pursuit of its policies would likely result in a violation of M. C.'s federally protected rights.

Defendant had actual or constructive knowledge that M. C. was not being educated because of

his disability, that M. C. had a federally protected right to be free from discrimination and to be

educated, but failed to take action to enroll M. C. in school when his mother registered him on

January 10, 2017.

FOURTH CLAIM

Intentional Discrimination against Mr. and Mrs. C. due to their relationship to M.C. in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.  and its implementing regulations at 28 C.F.R. § 35.130(g)

87.     Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 86 inclusive.

88.      28 C.F.R. § 35.130(g) provides:

A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

89.     Mr. and Mrs. C. have the same right as parents of nondisabled children residing in Manchester to have their child educated upon registration in the public school.

90.     By failing to educate M. C. for seven weeks, defendants subjected Mr. and Mrs. C. to discrimination on the basis of their relationship to their son.

91.     Defendant's actions were intentional and/or evidenced animus against Plaintiffs and their right to be free from discrimination.

92.     In the alternative, Defendant acted with deliberate indifference to the strong likelihood that pursuit of its policies would likely result in a violation of M.C.'s federally protected rights. Defendant had actual or constructive knowledge that M. C. was not being educated because of his disability, that M. C. had a federally protected right to be free from discrimination and to be educated, but failed to take action to enroll M. C. in school when his mother registered him on January 10, 2017.  Dr.  Martin, Dr. Dolloff, Jennifer Freitas, Karen Davis and Charlene Gleason, individually or collectively, acted with deliberate indifference to M.C.'s federally protected rights.

FIFTH CLAIM

Intentional Exclusion from Education in Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. and its implementing regulation at 35 C.F.R. § 104.33(d)

93.     Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 92 inclusive.

94.     The Rehabilitation Act of 1973, 29 U.S.C. § 794(a) provides**:**

(a)     **Promulgation of rules and regulations**

    No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

95.     M. C.  is a "qualified individual with a disability" within  the  meaning of the Rehabilitation Act of 1973.

96.     Defendant receives federal financial assistance

97.     Defendant operates a "Program or activity," namely a public school system, as defined unde4 29 U.S.C. § 794(b)

98.     Regulations implementing Section 504 specific to education require: "A recipient may not exclude any qualified handicapped person from a public elementary or secondary education after the effective date of this part. 35 C.F.R. § 104.33(d).

99.     Defendant intentionally discriminated against M. C. on the basis of his disability in violation of the Rehabilitation Act and 35 C.F.R. § 104.33(d) because it failed to provide him with an education from January 10-March 8, solely on the basis of his disability.

100.     In the alternative, Defendant acted with deliberate indifference to the strong likelihood that pursuit of its policies would likely result in a violation of M. C.'s federally protected rights.

Defendant had actual or constructive knowledge that M. C. was not being educated because of his disability, that M. C. had a federally protected right to be free from discrimination and to be educated, but failed to take action to enroll M. C. in school when his mother registered him on January 10, 2017.

## SIXTH CLAIM
### In the Alternative

*Respondeat Superior* Liability for Employees' Deliberate Indifference to Rights Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973

101.    Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 100 inclusive.

102.     Defendant is liable in *respondeat superior* when its employees act with deliberate indifference to the rights protected under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

103.    Defendant's employees, Dr.  Martin, Dr. Dolloff, Jennifer Freitas, Karen Davis, Mark Ersick, and Charlene Gleason, and other meeting attendees, individually and/or collectively, acted with deliberate indifference to M.C.'s federally protected rights to be free of discrimination under Title II and Section 504, subjecting Defendant to liability in *respondeat superior*.

## SEVENTH CLAIM

Equal Protection Guaranteed by the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983

104.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 inclusive.

105.    42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

19

secured by the Constitution and laws, shall be liable to the person injured in an action at law, equity, or other proper proceeding for redress.

106.    Defendant is a "person" under § 1983.

107.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution  provides that no state "may deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1.

108.    As an elementary school-aged resident of Manchester, New Hampshire, M. C. had the same right as elementary school-aged residents without disabilities to be educated when his parent registered him for public school.

109.    Defendant treated M. C. differently from similarly situated persons without disabilities because it denied him access to an education because of his disabilities for seven weeks.

110.    There is no rational basis for this different treatment.

111.    Defendant acted pursuant to and has an official municipal policy, custom and/or practice to deny access to education to students with disabilities who move into the district until it conducts an evaluation, meets, and imposes additional requirements on students with disabilities and their parents or guardians.

112    This policy, custom, and/or practice was carried out by Defendant's policymakers.

113.    In the alternative, if these actions were not carried out by Defendant's policymakers, they were a persistent and widespread practice to which Defendant acquiesced and/or explicitly or tacitly authorized.

114.    Charlene Gleason, Jennifer Freitas, Dr. Dolloff, Karen Davis, Mark Ersick, Dr. Martin, and other meeting attendees acted within the scope of their employment.

115.    Such acquiescence and authorization amounted to Defendant's "standard operating procedure."

116.    As a result, Defendant violated M. C.'s constitutional right to equal protection because Defendant denied him access to an education for seven weeks because of his disabilities.

## EIGHTH CLAIM

Procedural Due Process Guaranteed by the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983

117.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 116 inclusive.

118.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects against the deprivation of life, liberty, or property without the due process of law. U.S. Const. amend XIV § 1.

119.    The Due Process Clause requires certain procedures, such as notice and a hearing, by which an individual can prove and redress a deprivation of a property interest.

120.    The right to a public education. is a property interest  protected by the Due Process Clause.

121.    Defendant prevented M.C. from receiving an education for seven weeks without due process of law, e.g., notice and a hearing, in violation of the Due Process Clause of the Fourteenth Amendment.

## NINTH CLAIM
In the Alternative

Failure to supervise and train

122.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 121 inclusive.

123.    Defendant failed to supervise and train its employees regarding M.C.'s rights under The Americans with Disabilities Act, Section 504 and the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

124.    Defendant had notice that its supervision and training was deficient because M. C. has an obvious right to an education, but was not allowed to attend school for seven weeks.

125.    A pattern of violation by untrained employees was evident over the course of seven weeks.

126.    In the alternative, even if these actions do not show a pattern, Defendant had actual or constructive knowledge that the highly predicable consequence of its failure to train or supervise its untrained employees would be a violation of M.C.'s federally protected rights.

127.    Defendant's failure to train and supervise its untrained employees caused M.C. to be denied an education for seven weeks.

128.    Defendant's failure to train and supervise its untrained employees amounts to deliberate indifference to Plaintiffs' federally protected rights.

RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for relief as follows:

A.    The issuance of a declaratory judgment that Defendants have violated the Americans with Disabilities Act and its implementing regulations; the Rehabilitation Act of 1973 and its implementing regulations; and the United States Constitution;

B.    Compensatory damages;

C.    An award of reasonable attorneys' fees and costs;

D    Such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of August, 2018,

/s/Sheila Zakre, Esq. #9101
Zakre Law Office
4 Park St. Suite 206
Concord, NH 03301
Attorney for Susan C. George C. and M.C.